UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBIE ALLEN WOODS,<br>　　　　　Plaintiff,<br>　　v.<br>CITY OF HAYWARD, et al.,<br>　　　　　Defendants. | Case No. 19-cv-01350-JCS<br><br>**ORDER REGARDING MOTION TO DISMISS**<br>Re: Dkt. No. 13 |

## I. INTRODUCTION

Plaintiff Bobbie Allen Woods, pro se, brought this action against Defendants the City of Hayward, the Hayward Police Department, Hayward Police Officer B. Tong, and Hayward Police Sergeant Polar[1] asserting claims based on a police search of Woods's home. Defendants move to dismiss. The Court found the motion suitable for resolution without oral argument and vacated the noticed hearing date. For the reasons discussed below, the motion is DENIED as to Woods's claim under the Americans with Disabilities Act ("ADA") against the City of Hayward and the Hayward Police Department, GRANTED with prejudice as to Woods's ADA claims against Tong and Polar, and GRANTED with leave to amend as to all other claims. If Woods wishes to pursue the claims dismissed with leave to amend, he may file an amended complaint no later than December 6, 2019.[2]

---

[1] Although the complaint and the parties' briefs consistently refer to Sgt. "Polar," a consent form filed by defense counsel on behalf of "Polar" lists the name "Ruben Pola" as the client consenting to magistrate judge jurisdiction. *See* dkt. 22. Accordingly, "Polar" may be an erroneous spelling of "Pola." All parties appear to agree that the correct defendants have responded to the complaint, however, and the discrepancy is not relevant to the outcome of the present motion. For consistency with the complaint and briefs, this order uses the name "Polar."

[2] All parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. ALLEGATIONS OF THE COMPLAINT

Woods is a seventy-year-old African American man with muscular dystrophy and a disability as a result of his service in the United States Air Force during the Vietnam War era. Compl. (dkt. 1) ¶¶ 9, 47.[3] Woods has used wheelchair since his retirement from the United States Postal Service in 2009. *Id.* Woods rents two rooms of his home in Hayward to Nashi Mixon-Alexander and her five- and fourteen-year-old sons, all of whom are also African American. *Id.* ¶¶ 10–11. Mixon-Alexander serves as Woods's caregiver through a home aide program. *Id.* ¶ 12. The complaint suggests that her fourteen-year-old son has had some degree of history with the juvenile justice system, although Woods and Mixon-Alexander "were not complicit with his activities in any manner." *See id.* ¶ 26 (alleging that Woods and Mixon-Alexander "were actively involved with Ms. Mixon-Alexander's 14-year-old child's Probation Officers, the Hayward Police Department, the Juvenile District Attorney Office and Hayward Unified School District officials to monitor his behavior").

On March 15, 2018, Woods awoke to a voice over a loudspeaker advising that Woods's home was surrounded and that all residents must leave the house with their hands raised. *Id.* ¶ 13. After the command was repeated several times, Woods heard the sound of an explosion. *Id.* "[E]xtremely frightened," Woods attempted to leave his bed, but struggled due to his disability and injured his neck and elbow in the process. *Id.* ¶¶ 14–15.

As Woods, Mixon-Alexander, and her older son approached the door of the house, police officers addressed each of the four residents of the home by name and ordered them to exit the house with their hands over their heads, despite neighbors shouting to the police officers that the youngest son was only five years old. *Id.* ¶ 16. Mixon-Alexander and her older son exited first, while Woods and his neighbors yelled to police that he could not raise his hands because he was disabled. *Id.* ¶ 17. After the police shined a light on Woods, they allowed him to wheel himself out of the house without raising his hands, but aimed rifles at his head as he did so. *Id.* Mixon-

---

[3] Because the factual allegations of a complaint are generally taken as true at the pleading stage, this section recites the allegations of Woods's complaint as if true. Nothing in this order should be taken as resolving any issue of fact that might be disputed at a later stage of the case.

Alexander's younger son remained sleeping in his bed, and Woods, Mixon-Alexander, and neighbors pleaded with police to allow them to go get him in order to avoid any risk that he would be shot by police searching the home, but the police did not allow them to do so. *Id.* ¶ 18.

When Woods requested a jacket or blanket, and to be allowed to wait in his home, the police did not let him return to his home, but after about half an hour, the police provided him with "a yellow body tarp bag" to use as a blanket. *Id.* ¶¶ 20–21. The body bag, as well as the sound of the explosion that preceded the search, triggered the post-traumatic stress disorder ("PTSD") that Woods had developed as a result of his experience in the Vietnam War. *Id.* ¶¶ 21–22.

Mixon-Alexander was allowed back into the house to get her younger son and change her clothes around 6:07 AM, approximately twenty-five minutes after the first loudspeaker announcements, and Woods was allowed to return to the front room of the house nearly forty minutes after that, around 6:44 AM. *Id.* ¶ 24. The police officers left the house around 6:58 AM. *Id.* Police officers denied Woods's repeated requests to speak with the supervising officers until the search was finished and the officers were preparing to leave, at which point Defendants Tong and Polar identified themselves as having supervised the operation. *Id.* ¶ 23.

The search was conducted pursuant to a warrant that was issued eight days earlier, on March 7, 2019. *Id.* ¶ 27. Woods contends that there was sufficient time between the issuance of the warrant and its execution for Defendants to have determined that the occupants of the house were not a threat and did not require the show of force used in the search. *Id.* Woods also characterizes the police officers as "disrespectful for not considering [his] disability, [his] age, and the age of the children, as well as searching female renter Ms. Mixon-Alexander by male officers while female officers were available on the scene." *Id.* ¶ 25. Woods describes the use of force in the search as "excessive," and states his "belie[f] that if [he] were a white veteran with the same profile the warrant would not have been conducted" in the same manner. *Id.* ¶¶ 27–28.

Woods's complaint includes the following claims: (1) unreasonable seizure of Woods's person in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) unreasonable search in violation of the Fourth Amendment and 42 U.S.C. § 1983; (3) racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983; (4) failure to

3

provide a reasonable accommodation in violation of the Americans with Disabilities Act; (5) negligence; (6) intentional infliction of emotional distress; and (7) invasion of privacy.

## III. ANALYSIS

### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained in *Hebbe*, "while the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342. Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). In general, courts "should freely give leave when justice so requires." *Id.*

**B. Claims Under § 1983**

**1. Unreasonable Seizure**

A seizure "in the constitutional sense . . . occurs when there is a restraint on liberty to the degree that a reasonable person would not feel free to leave." *Doe ex rel. Doe v. Haw. Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). "Violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The Fourth Amendment right to be free of unreasonable seizures requires as a "general rule" that "seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 193 (2013) (citation and internal quotation marks omitted).

Woods's allegations in this case primarily relate to the manner in which he was required to leave his home, at which time Defendants *required* Woods to leave a particular location, rather than preventing him from doing so. There is no allegation indicating that, after he left the home, Defendants maintained control over Woods such that a reasonable person in his position would not have felt free to leave. Woods includes factual assertions in his opposition brief that might

5

tend to suggest a seizure—for example, that he was "guarded by two police officers" while the police completed their search, Opp'n (dkt. 28) at 3—but such assertions in a brief cannot substitute for allegations in a complaint. This claim is DISMISSED with leave to amend. If Woods chooses to amend this claim, he should include in his amended complaint all of the circumstances that led him to believe he was not free to leave.[4]

### 2. Unreasonable Search

Woods acknowledges in his complaint that the search of his property was conducted pursuant to a warrant, and includes no allegations suggesting that the warrant was invalid or that the search exceeded the scope of the warrant. *See* Compl. ¶ 27. Instead, Woods relies on the Ninth Circuit's decision in *Franklin v. Foxworth*, 31 F.3d 873 (9th Cir. 1994), which involved a search of a home where police handcuffed a sick and bedridden man and moved him to a crowded living room with his genitals exposed for the duration of the search. Although *Franklin* introduces its analysis with a discussion of the reasonableness of a "search or seizure," it soon moves on to the standard for "determining the reasonableness of a seizure," and focuses on the circumstances of the plaintiff's "detention." *Id.* at 875–78. This Court therefore understands *Franklin* as addressing an unreasonable seizure, not an unreasonable search. Because, as discussed above—and in contrast to the handcuffed plaintiff in *Franklin*—Woods has not alleged facts showing that a reasonable person in his situation would not have felt free to leave, Woods has not stated a claim for unreasonable seizure, and *Franklin* does not support a claim for unreasonable search.

Assuming for the sake of argument that an excessive show of force during a search pursuant to a valid warrant might in some circumstances establish a constitutionally unreasonable search without constituting a seizure, Woods has not made such a showing here. An early morning search by an armed SWAT team could be reasonable under at least some circumstances where the police have reason to believe that the target of the search poses a serious threat to their safety. Woods's complaint includes no information on the purpose of the search warrant, what

---

[4] Woods's claim for unreasonable seizure relates only to the purported seizure of his person. *See* Compl. ¶¶ 31–34 (referring to Defendants having "seized Plaintiff"). The Court has no occasion to consider whether the facts alleged, or facts that might be alleged in amended complaint, could state a claim for seizure of Woods's property.

6

sort of suspected criminal activity led to its issuance, or whether Defendants had grounds to believe that the target of the search (apparently Mixon-Alexander's older son) posed a serious threat. Absent any allegation to that effect, the complaint does not support an inference that the means by which the search was carried out were unreasonable. Woods's claim for unreasonable search is therefore DISMISSED.[5]

It is possible that Woods could amend his complaint to state a claim for unreasonable search despite the existence of a warrant. For example, he might be able to allege facts supporting a conclusion that the warrant was invalid or that the search exceeded the scope of the warrant. The Court therefore grants Woods leave to amend this claim.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Clark v. California*, 123 F.3d 1267, 1270 (9th Cir. 1997). Defendants argue that Woods has not alleged facts plausibly supporting the claim of racial discrimination that he asserts.

The case on which Woods relies, *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131 (N.D. Cal. 2000), predates the Supreme Court's decisions in *Iqbal* and *Twombly*, and does not apply the more stringent pleading standard that federal courts have used since those decisions. *See Rodriguez*, 89 F. Supp. 2d at 1135 (reciting the no-longer-valid rule that "[f]or a motion to dismiss to be granted, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved"). That case is no longer good law with respect to the applicable pleading requirements.

In *Iqbal*, the Supreme Court held that "a 'formulaic recitation of the elements' of a

---

[5] Defendants state in headings of their motion and reply brief that this claim fails because Woods "was not Subject to Search." Mot. at 3; Reply (dkt. 29) at 2. The intended meaning of that assertion is not clear. There is no question that Defendants conducted a search of Woods's home, and Defendants do not appear to dispute the uncontroversial proposition that Woods has a cognizable interest in such a search. Nevertheless, because Woods has not plausibly alleged that the search was unreasonable, his claim is dismissed with leave to amend.

7

constitutional discrimination claim" is not sufficient. *Iqbal*, 556 U.S. at 681. Woods's conclusory assertion that "[s]imilarly situated White individuals would not have been the subject of the unreasonable seizure and search" constitutes such a recitation. Compl. ¶ 43. Woods does not allege, for example, that non-African Americans were *in fact* treated differently in similar circumstances, or any other facts that might support an inference that Defendants' conduct was based on Woods's and his tenants' race. Nor does Woods allege more direct indicia of discrimination, such as any police officer explicitly referring to Woods's or his tenants' race. There is no indication that the comments by police that Woods cites in his opposition—"'they sleep around a lot' and 'your house is suspected as a safe house'"—had any connection to race. *See* Opp'n at 5. Woods's equal protection claim is therefore DISMISSED with leave to amend.

### 4. Claims Against the Hayward Police Department

Defendants argue that the Hayward Police Department cannot be sued under § 1983 because "municipal departments and sub-units are not considered 'persons' within the meaning of Section 1983." Mot. (dkt. 13) at 6. If correct, such an argument would support dismissal of Woods's § 1983 claims against the Hayward Police Department with prejudice.

Woods does not address this argument in his opposition brief, but none of the cases that Defendants cite for that proposition in fact so hold. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69 (1989) (holding that *states* and "arms of the *State*" are not persons for the purpose of § 1983 (emphasis added)); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 & n.54 (1978) (holding that "local government units" *can* be sued under § 1983 in some circumstances); *Harvey v. Estes*, 65 F.3d 784, 791–92 (9th Cir. 1995) (holding that "an informal association of various governmental entities setting joint policies and practices for conducting drug investigations and raids" was not "person" for the purpose of § 1983, without addressing whether the individual agencies would be subject to suit); *Dean v. Barber*, 951 F.2d 1210, 1214–15 (11th Cir. 1992) (holding that "[u]nder Alabama law, a county sheriff's department lacks the capacity to be sued," but noting Ninth Circuit precedent that California law is to the contrary); *cf.* Mot. at 6 (citing all of those cases). Under California law as interpreted by the Ninth Circuit, a "Police Department is a public entity under [California Government Code] section 811.2" and thus "may be sued in

Federal court." *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986) (reaching that conclusion in the context of a claim under § 1983); *see also Dean*, 951 F.2d at 1214–15 (acknowledging that holding). Although all of Woods's § 1983 claims, including claims against the Hayward Police Department, are dismissed with leave to amend for the reasons discussed above, the Court finds no basis to dismiss claims against the Hayward Police Department with prejudice.

### C. ADA Claim

Woods brings a claim for failure to provide reasonable accommodation of his disability under the ADA. Woods alleges that he is a qualified individual with a disability on account of his muscular dystrophy, that "Defendants knew that [he] was disabled, including specifically that he had muscular dystrophy and that this condition is exacerbated by cold because he told them so repeatedly," and that Defendants denied his request to be allowed to sit inside his home during the search as an accommodation of that disability. Compl. ¶¶ 46–49.

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of such services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. That provision can encompass "anything a public entity does." *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (citation and internal quotation marks omitted). A plaintiff's participation in the state activity at issue need not have been "voluntary" to bring it within the ambit of the ADA. *See Penn. Dep't of Corr. v. Yaskey*, 524 U.S. 206, 211 (1998).

In order to state a claim under Title II of the ADA, a plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citation and internal quotation marks omitted; alteration in original). Title II may be violated in at least two distinct ways: (1) by singling out a disabled person for adverse treatment *because of* that person's

9

disability; or (2) by failing to provide a reasonable accommodation to a person with a disability. *See, e.g.*, *Waller ex rel. Estate of Hunt v. Danville*, 556 F.3d 171, 174 (4th Cir. 2009). Defendants devote much of their motion to the former theory, which does not appear in Woods's complaint, and do not meaningfully address the latter, under which "a public entity [must] 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity.'" *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999) (quoting 28 C.F.R. § 35.130(b)(7)).

Defendants move to dismiss this claim on the basis that the "'duty to provide "reasonable accommodations" under the ADA <u>arises only when a policy discriminates on the basis of disability</u>,'" and "[n]o legal authority provides that [Woods's] request constitutes a 'reasonable accommodation' and that a denial of such request is actionable under the ADA." Mot. at 5 (quoting *Weinreich v. L.A. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)) (emphasis added by Defendants). While Defendants are correct that the duty to accommodate applies only where a policy discriminates against the disabled, the Ninth Circuit has held that a plaintiff may bring a claim under Title II of the ADA "where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds*, 135 S. Ct. 1765 (2015).[6] Accordingly, even a facially neutral policy can "discriminate[] on the basis of disability," *see Weinreich*, 114 F.3d at 978, if it subjects a person with a disability to "greater injury or indignity" than someone who is not disabled, *Sheehan*, 743 F.3d at 1232.

---

[6] In *Sheehan*, the City and County of San Francisco initially sought certiorari on the question of whether the ADA applies to the conduct of police officers confronted with violence, but after certiorari was granted, presented no such argument in its briefs to the Supreme Court. *Sheehan*, 135 S. Ct. at 1772–73. The Supreme Court dismissed certiorari as improvidently granted as to the ADA claim, but reversed the Ninth Circuit on unrelated issues pertaining to the plaintiff's separate claim under 42 U.S.C. § 1983. *Id.* at 1774, 1778.

Woods has alleged that he suffered greater injury and indignity as a result of being forced to wait outside his home in the predawn chill because his muscular dystrophy was exacerbated by cold. Defendants have not argued that allowing Woods to wait inside or retrieve a jacket would "fundamentally alter the nature of the services, program, or activity" at issue in the search, much less that the Court could so hold at the pleading stage. *Cf. Zukle*, 166 F.3d at 1046. Defendants' motion to dismiss Woods's ADA claim against the City of Hayward and the Hayward Police Department is DENIED.

The ADA does not, however, provide a cause of action against individual defendants in their individual capacities. *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8, 1011–12 (8th Cir. 1999) (en banc) (cited with approval by *Vinson*). Woods's ADA claims against Defendants Polar and Tong are DISMISSED with prejudice.

### D. State Law Claims

Woods asserts claims under California law for negligence, intentional infliction of emotional distress, and invasion of privacy. Defendants move to dismiss these claims on the grounds that: (1) Woods has not alleged sufficient facts to support them under the *Iqbal* pleading standard; (2) Woods has not alleged compliance with California's government claims requirements; and (3) the City of Hayward and the Hayward Police Department can only be used as provided by statute. *See* Mot. at 6–7.

Defendants are correct that Woods must allege compliance with California's government claims procedure in order to state a claim under California law against a public entity or its employees. *See* Cal. Gov't Code §§ 910, 945.4, 950.2; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (affirming dismissal for failure to allege compliance with California's government tort claim procedure). Defendants do not appear to dispute that Woods filed at least some claim with the City of Hayward. Nevertheless, it is not enough for Woods to assert compliance in his opposition brief; he must allege compliance in his compliant. *See Karim-Panahi*, 839 F.2d at 627. If Woods decides to pursue these causes of action, he may wish to file the claim that he submitted to Defendants as an attachment to his amended complaint. If Woods

11

alleges compliance but does not attach the claim to his complaint, and Defendants believe the claim that he submitted does not encompass all of the claims asserted in this action, they may request judicial notice of the claim in a subsequent motion to dismiss.

Pending a sufficient allegation of compliance with the government claims requirements, the Court declines to reach Defendants' argument that Woods did not include sufficient factual allegations to support these claims, although Woods is encouraged to allege all relevant facts of which is aware in any amended complaint.

Defendants are correct that municipal governments may only be sued under California law as provided by statute. Cal. Gov't Code § 815. Defendants neglect, however, section 815.2 of the California Government Code, which provides that a public entity may be held liable for the conduct of its employees within the scope of their duties to the same extent as those employees can be held liable, and section 820, which provides that public employees may be held liable to the same extent as private citizens. Taking those statutes into account, the immunity against non-statutory claims provided by section 815 is unlikely to affect the viability of Woods's claims in this case.

Because Woods has not alleged compliance with California's government claims requirements, his state law claims are DISMISSED with leave to amend.

## IV. CONCLUSION

For the reasons stated above, all of Woods's claims are DISMISSED with leave to amend, except that his ADA claims against the City of Hayward and the Hayward Police Department may proceed, and his ADA claims against the individual defendants are DISMISSED with prejudice and without leave to amend.

If Woods is aware of additional facts that he could allege to cure the defects identified above, he may file an amended complaint **no later than December 6, 2019**. Any amended complaint must include the caption and civil case number used in this order (19-cv-01350) and the words FIRST AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the previous complaint, any amended complaint may not incorporate claims or allegations of Woods's original complaint by reference, but instead must include all of the facts

and claims Woods wishes to present and all of the defendants he wishes to sue. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

Woods, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance. The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. The Oakland office is located in Room 470-S on the 4th floor at 1301 Clay Street, Oakland, CA 94612. Appointments can be made by calling (415) 782-8982 or signing up in the appointment book located outside either office, and telephonic appointments are available. Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated: November 6, 2019

JOSEPH C. SPERO
Chief Magistrate Judge