UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBIE ALLEN WOODS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HAYWARD, et al., <br><br> Defendants. | Case No. 19-cv-01350-JCS <br><br> **ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. No. 53 |

## I. INTRODUCTION

Plaintiff Bobbie Allen Woods, pro se, brought this action against Defendants the City of Hayward, the Hayward Police Department, Hayward Police Officer B. Tong, and Hayward Police Sergeant Polar[1] asserting claims based on a police search of Woods's home pursuant to a warrant. On a previous motion to dismiss Woods's original complaint, the Court allowed Woods's claim under the Americans with Disabilities Act to proceed, but dismissed his remaining claims, largely with leave to amend. Woods filed an amended complaint and Defendants move once again to dismiss. The Court held a hearing on February 28, 2020. For the reasons discussed below, Defendants' motion is GRANTED in part and DENIED in part. If Woods wishes to file a second amend complaint to pursue the intentional infliction of emotional distress claim dismissed by this order, he may do so no later than April 3, 2020.[2]

---

[1] There is some indication in Defendants' filings that the defendant named as "Polar" in Woods's pleadings might be "Ruben Pola." *See, e.g.*, dkt. 22 (magistrate judge consent form). All parties appear to agree that the correct defendants have responded to the complaint, however, and the discrepancy is not relevant to the outcome of the present motion. For consistency with Woods's allegations, which are generally taken as true at this stage of the case, this order uses the name "Polar." No offense is intended if that name is not correct.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Previous Order

Woods's original complaint included the following claims: (1) unreasonable seizure of Woods's person in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) unreasonable search in violation of the Fourth Amendment and 42 U.S.C. § 1983; (3) racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983; (4) failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"); (5) negligence; (6) intentional infliction of emotional distress; and (7) invasion of privacy.

The Court granted Defendants' motion to dismiss Woods's unreasonable seizure claim because Woods did not allege that, once he was removed from his home, Defendants intentionally acquired "physical control" such that a reasonable person in Woods's position would not feel free to leave. Order Re Mot. to Dismiss ("MTD Order," dkt. 35)³ at 5–6 (citation omitted). The Court dismissed Woods's unreasonable search claim because he relied primarily on a case addressing unreasonable seizures, and because even "[a]ssuming for the sake of argument that an excessive show of force during a search pursuant to a valid warrant might in some circumstances establish a constitutionally unreasonable search without constituting a seizure," Woods failed to allege facts supporting a conclusion that this particular search was unreasonable *Id.* at 6–7. The Court dismissed Woods's equal protection claim because he failed to allege facts (as opposed to mere conclusory assertions) supporting a conclusion that he was treated differently based on his race. *Id.* at 7–8. The Court allowed Woods's ADA claim to proceed against the City of Hayward and the Hayward Police Department, but dismissed that claim against the individual defendants with prejudice, because "[t]he ADA does not . . . provide a cause of action against individual defendants in their individual capacities." *Id.* at 9–11. Finally, the Court dismissed Woods's state law claims for failure to allege compliance with California's government claims procedure. *Id.* at

---

³ *Woods v. City of Hayward*, No. 19-cv-01350-JCS, 2019 WL 5789256 (N.D. Cal. Nov. 6, 2019). Citations herein to the Court's previous order refer to page numbers of the version filed in the Court's ECF docket.

11–12.

The Court granted Woods leave to amend all of his dismissed claims except for the ADA claims against individual defendants. In considering whether leave to amend was appropriate, the Court rejected an argument that local police departments cannot be sued under § 1983, noting that the Ninth Circuit has held to the contrary. *Id.* at 8–9 (citing, *e.g.*, *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986)).

### B. Allegations of the First Amended Complaint

The allegations of Woods's first amended complaint are similar to his original complaint, with additions intended to address the concerns of the Court's previous order. Because the factual allegations of a complaint are generally taken as true at the pleading stage, this section recites the allegations of Woods's first amended complaint as if true. Nothing in this order should be taken as resolving any issue of fact that might be disputed at a later stage of the case

Woods is a seventy-year-old African American man with muscular dystrophy and a disability as a result of his service in the United States Air Force during the Vietnam War era. 1st Am. Compl. ("FAC," dkt. 47) ¶¶ 9, 46. Woods has used a wheelchair since his retirement from the United States Postal Service in 2009. *Id.* ¶ 9. Woods rents two rooms of his home in Hayward to Nashi Mixon-Alexander and her five– and fourteen-year-old sons, all of whom are also African American. *Id.* ¶¶ 10–11. Mixon-Alexander serves as Woods's caregiver through a home aide program. *Id.* ¶ 12. The complaint suggests that her fourteen-year-old son has had some degree of history with the juvenile justice system, although Woods and Mixon-Alexander "were not complicit with his activities in any manner." *See id.* ¶ 26 (alleging that Woods and Mixon-Alexander "were actively involved with Ms. Mixon-Alexander's 14-year-old child's Probation Officers, the Hayward Police Department, the Juvenile District Attorney Office and Hayward Unified School District officials to monitor his behavioral issues"). Woods alleges that the Hayward Police Department and its officers knew or should have known of his disability based on his history of working with Hayward law enforcement authorities in the context of Mixon-Alexander's son's "behavioral issues." *See id.* ¶¶ 26–27.

On March 15, 2018, Woods awoke to a voice over a loudspeaker advising that Woods's

3

home was surrounded and that all residents must leave the house with their hands raised. *Id.* ¶ 13. After the command was repeated several times, Woods heard the sound of an explosion. *Id.* "[E]xtremely frightened," Woods attempted to leave his bed, but struggled due to his disability and injured his neck and elbow in the process. *Id.* ¶¶ 14–15.

As Woods, Mixon-Alexander, and her older son approached the door of the house, police officers addressed each of the four residents of the home by name and ordered them to exit the house with their hands over their heads, despite neighbors shouting to the police officers that the youngest son was only five years old. *Id.* ¶ 16. Mixon-Alexander and her older son exited first, while Woods and his neighbors yelled to police that he could not raise his hands because he was disabled. *Id.* ¶ 17. After the police shined a light on Woods, they allowed him to wheel himself out of the house without raising his hands, but aimed rifles at his head as he did so. *Id.* Mixon-Alexander's younger son remained sleeping in his bed, and Woods, Mixon-Alexander, and neighbors pleaded with police to allow them to go get him in order to avoid any risk that he would be shot by police searching the home, but the police did not allow them to do so. *Id.* ¶ 18.

When Woods left the house, he was "directed . . . by armed Hayward police officers to drive his wheelchair half a block up the street, and then . . . ordered to 'park right there,'" where he was "guarded by two officers who had visible guns in their gun-belts." *Id.* ¶ 19. Woods "was shivering cold because he only had on a light night shirt, and his muscular dystrophy makes him especially sensitive to cold temperatures" and causes cramps and pain. *Id.*

When Woods requested a jacket or blanket, and to be allowed to wait in his home, the police did not let him return to his home, but after about half an hour, the police provided him with "a yellow body tarp bag" to use as a blanket. *Id.* ¶¶ 20–21. The body bag, as well as the sound of the explosion that preceded the search, triggered the post-traumatic stress disorder ("PTSD") that Woods had developed as a result of his experience in the Vietnam War. *Id.* ¶¶ 21–22.

Mixon-Alexander was allowed back into the house to get her younger son and change her clothes around 6:07 AM, approximately twenty-five minutes after the first loudspeaker announcements, and Woods was allowed to return to the front room of the house nearly forty minutes after that, around 6:44 AM. *Id.* ¶ 24. The police officers left the house around 6:58 AM.

4

*Id.* Police officers denied Woods's repeated requests to speak with the supervising officers until the search was finished and the officers were preparing to leave, at which point Defendants Tong and Polar identified themselves as having supervised the operation. *Id.* ¶ 23.

The search was conducted pursuant to a warrant that was issued eight days earlier, on March 7, 2019. *Id.* ¶ 28. Although "[t]he warrant was for the search and seizure of [the] 14 year old who resided in one room in the home," the search "was performed of the entire house," and "[p]ersonal and proprietary items in [Woods's] bedroom and office were examined and removed." *Id.* ¶¶ 41–42. Woods contends that there was sufficient time between the issuance of the warrant and its execution for Defendants to have determined that the occupants of the house were not a threat and did not require the show of force used in the search. *Id.* ¶ 28. Woods also characterizes the police officers as "disrespectful for not considering [his] disability, [his] age, and the age of the children, as well as searching female renter Ms. Mixon-Alexander by male officers while female officers were available on the scene." *Id.* ¶ 25. Woods describes the use of force in the search as "excessive," and states his "belie[f] that if [he] were a white veteran with the same profile the warrant would not have been conducted" in the same manner. *Id.* ¶¶ 28–29. Woods "filed a government claim with the City of Hayward on August 17, 2018, which was denied on September 25, 2018." *Id.* ¶ 30.

Woods's complaint includes the following claims: (1) unreasonable seizure of Woods's person in violation of the Fourth Amendment and 42 U.S.C. § 1983, FAC ¶¶ 32–37; (2) unreasonable search in violation of the Fourth Amendment and 42 U.S.C. § 1983, FAC ¶¶ 38–44; (3) failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act, against only the City of Hayward and the Hayward Police Department, *id.* ¶¶ 45–50; (5) negligence, *id.* ¶¶ 51–55; (6) intentional infliction of emotional distress, *id.* ¶¶ 56–61; and (7) invasion of privacy, *id.* ¶¶ 62–68. Woods no longer brings an ADA claim against the individual defendants, and also omits the equal protection claim that appeared in his original complaint.

### C. Parties' Arguments

Defendants contend that Woods's unreasonable seizure claim should be dismissed because

5

he has not sufficiently alleged that a reasonable person in his position would not have felt free to leave, and because even if Woods was seized, Defendants had a categorical right to detain him as because he was a resident of a home that was being searched pursuant to a valid warrant. Mot. (dkt. 53) at 3–4. Defendants argue that the unreasonable search claim should be dismissed because the search was conducted pursuant to a valid warrant and Woods has not alleged sufficient facts regarding the nature of the warrant to indicate that the show of force during the search was excessive. *Id.* at 4–5. In the alternative, Defendants argue that these claims should be dismissed as to Defendants Tong and Polar based on qualified immunity, and as to the City of Hayward and the Hayward Police Department for failure to meet the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Mot. at 5–7. Defendants also contend that the Hayward Police Department should be dismissed as a defendant because it is redundant to the City of Hayward. *Id.* at 6.

Despite this Court's previous order allowing Woods's ADA claim to proceed against the City of Hayward and the Hayward Police Department based on substantially identical allegations, *see* MTD Order at 9–11, Defendants now present a new argument that this claim should be dismissed for failure to establish deliberate indifference. Mot. at 7–9.

Defendants argue without citation to authority that all of Woods's state law claims must be dismissed for failure to show an unreasonable search or seizure. *Id.* at 9. Addressing the claims individually, Defendants argue that Woods has not alleged facts showing a duty of care for his negligence claim, has not alleged intentional or reckless conduct to support his claim for intentional infliction of emotional distress, and provides only conclusory assertions and "no legal basis" for his invasion of privacy claim. *Id.* at 9–10. Defendants contend that Woods has not alleged personal involvement in any common law tort by Tong or Polar, and that he has not identified a statutory basis for his claims against the City of Hayward and the Hayward Police Department as required by section 815 of the California Government Code. *Id.* at 10–11.

Woods argues that his allegations are sufficient, but requests leave to amend again if the Court determines otherwise. *See generally* Opp'n (dkt. 54).

## III. ANALYSIS

### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even post-*Iqbal*, courts must still liberally construe

pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained in *Hebbe*, "while the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342. Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). In general, courts "should freely give leave when justice so requires." *Id.* Further, when it dismisses the complaint of a pro se litigant with leave to amend, "'the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). "'Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors.'" *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

### B. Claims Against the Hayward Police Department

Defendants are correct that courts have in some cases dismissed individual department defendants as redundant where the municipalities of which they are a part are also named as defendants. Here, although it seems likely as a matter of common experience that the Hayward Police Department is merely an agency of the City of Hayward, there is no evidence or other basis in the record to reach that conclusion as a matter of law. It is also not clear that dismissing as redundant claims against the Hayward Police Department, while allowing claims against the City of Hayward to proceed, would have any practical effect on the case. The Court therefore declines to do so, but encourages the parties to discuss whether they can reach a stipulation on this issue.

## C. Claims Under § 1983

### 1. Entity Liability

In order to establish liability under § 1983 for governmental entities rather than individual defendants based on *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 681-682 (9th Cir. 2001), *abrogated on other grounds by Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Municipal liability for a constitutional violation "only attaches where (1) the alleged constitutional tort resulted from a municipality's custom, policy, or practice; (2) the tortfeasor was an official 'whose acts fairly represent official policy such that the challenged action constituted official policy'; (3) an official with policymaking authority ratified the tortfeasor's actions; or (4) the municipality failed to adequately train the tortfeasors." *Inmam v. Anderson*, 294 F. Supp. 3d 907, 921 (N.D. Cal. 2018) (citations omitted).

Woods asserts municipal liability based solely on ratification, specifically the City of Hayward "respond[ing] to [Woods's] complaint by expressly approving of the officers' conduct and finding no violations of city policy." FAC ¶ 44. Woods does not address this issue in his opposition brief. The Ninth Circuit has addressed "ratification" in the context of a *Monell* claim as follows:

> Municipalities cannot be held liable under a traditional *respondeat superior* theory. Rather, they may be held liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort." [*Monell*, 436 U.S.] at 691.
>
> Haugen's complaint did not allege, and he has not argued to us on appeal, that Brosseau was acting pursuant to any pre-existing policy when she shot him. Rather, he contends that the city and the police department are at fault because they failed to discipline Brosseau after the shooting. Haugen cannot, of course, argue that the municipality's later action (or inaction) caused the earlier shooting. Haugen argues instead that the city and police department should be held liable because they "ratified" Brosseau's decision to use deadly force.

9

> The ratification doctrine, asserted as a basis for municipal liability, originated in *St. Louis v. Praprotnik*, 485 U.S. 112 (1988). There, a plurality of the Supreme Court stated that "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* at 127. But the sentence from *Praprotnik* must be read in context. The Court held in *Praprotnik* that to establish municipal liability, a plaintiff must "prove[] the existence of an unconstitutional municipal policy." *Id.* at 128. A single decision by a municipal policymaker "may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations," *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)), but the plaintiff must show that the triggering decision was the product of a "conscious, affirmative choice" to ratify the conduct in question. *Gillette*, 979 F.2d at 1347. In the present case, Haugen has made no such showing.
>
> Although some municipal pronouncements ratifying a subordinate's action could be tantamount to the announcement or confirmation of a policy for purposes of *Monell*, here there are no facts in the record that suggest that the single failure to discipline Haugen rises to the level of such a ratification. *See, e.g., Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989) (refusing to hold that the "failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under Monell").

*Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003). "*Praprotnik* requires that a policymaker approve a subordinate's decision *and the basis for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).

Woods, apparently abandoning his *Monell* claim in his opposition brief, cites no authority for the proposition that mere denial of a government claim for compensation constitutes ratification sufficient to subject a government entity to liability under § 1983, and this Court declines to so hold. To hold such a denial sufficient "would simply smuggle *respondeat superior* liability into section 1983," in contravention of Ninth Circuit precedent. *See id.* at 1348. At the hearing, Woods identified no other facts that he could allege to support *Monell* liability. Woods's § 1983 claims against the City of Hayward and the Hayward Police Department are therefore DISMISSED without further leave to amend at this time, but without prejudice to Woods filing a motion for leave to reassert them if, at a later stage of the case, he becomes aware of facts supporting a policy, practice, or ratification sufficient to assert such claims.

### 2. Individual Liability

#### a. Unreasonable Search Claim

Woods acknowledges in his complaint that the search of his property was conducted pursuant to a warrant. *See* FAC ¶¶ 26–28, 41–43. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A police officer generally has qualified immunity for conducting [even] an unconstitutional search if he is acting on the basis of a facially valid warrant." *Barlow v. Ground*, 943 F.2d 1132, 1139 (9th Cir. 1991) (citing *Malley v. Briggs*, 475 U.S. 335, 344 n.6 (1986)). There is no indication that the warrant was facially invalid such that "no reasonably competent officer would have concluded that a warrant should issue." *See id.* at 1140 (citing *Malley*, 475 U.S. at 346 n.9). Defendants Tong and Polar are therefore entitled to qualified immunity to the extent that the scope of the search was consistent with that authorized by the warrant.[4]

Woods's first amended complaint includes only a limited description of the scope of the search warrant, stating that it "was for the search and seizure of [the] 14 year old who resided in one room in the home" and "did not mention [Woods] as subject of the warrant." FAC ¶ 42. Although courts generally take a plaintiff's allegations as true in evaluating a motion to dismiss under Rule 12(b)(6), courts need not do so where an allegation is contradicted by material properly subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Defendants have now filed the warrant itself in response to the Court's request at the hearing that they do so. *See* Agarwal Decl. (dkts. 58 (under seal), 60 (public version redacted to comply with Fed. R. Civ. P. 5.2)). The warrant is subject to judicial notice as incorporated by reference by

---

[4] The Court's previous order noted that even assuming for the sake of argument that an excessive show of force in conducting a search might in some circumstances constitute an unreasonable search in violation of the Fourth Amendment, Woods had not alleged sufficient facts regarding the basis for the search warrant to determine whether an early morning raid by a SWAT team was reasonable. *See* MTD Order at 6–7. To the extent that Woods's unreasonable search claim is based on the show of force rather than the extent of the search, that deficiency remains. Regardless, the Court remains unaware of any authority holding a search to be unreasonable and in violation of the Fourth Amendment based on a show of force.

11

Woods's complaint. *See United States v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). On its face, the warrant lists Woods's as address as among the "Place(s) to be searched," with no restriction on the areas within the house to be searched. *See* Agarwal Decl. Ex. 1. The Court therefore concludes that Defendants conducted the search pursuant to a facially valid warrant and are thus entitled to dismissal of Woods's claim for unlawful search at least based on qualified immunity. *See Barlow*, 943 F.2d at 1139. Defendants' motion is GRANTED as to this claim, which is DISMISSED with prejudice.

b. Unreasonable Seizure Claim

As noted in the Court's previous order, a seizure "in the constitutional sense . . . occurs when there is a restraint on liberty to the degree that a reasonable person would not feel free to leave." *Doe ex rel. Doe v. Haw. Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). "Violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The Fourth Amendment right to be free of unreasonable seizures requires as a "general rule" that "seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 193 (2013) (citation and internal quotation marks omitted).

The Court previously held that Woods had not sufficiently alleged that he was seized, and Defendants argue that his amended complaint fails for the same reason. *See* MTD Order at 5–6; Mot. at 3. Woods's present complaint includes new allegations relevant to this issue: that after leaving his house, police directed him to a particular location and told him to "park right here," and that after he did so, he was "guarded by two officers who had visible guns." FAC ¶ 19. Defendants' assertion that the officers merely "would not let him back into his home," Mot. at 3 (emphasis omitted), goes beyond the allegations of Woods's complaint. At the pleading stage, it is reasonable to infer that a reasonable person ordered to leave his home with rifles pointed at his head, instructed to "park" his wheelchair at a particular location, and thereafter "guarded" by armed police officers would not feel free to leave. Defendants cite no authority for their

12

suggestion that Woods's failure to affirmatively ask if he could leave is fatal to his claim. *See* Mot. at 3. The Court concludes that Woods has now sufficiently alleged a seizure.

The next question is whether the seizure was unreasonable in violation of the Fourth Amendment. The Supreme Court has held that Fourth Amendment allows "officers executing a search warrant 'to detain the occupants of the premises while a proper search is conducted,'" without need for "particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers." *Bailey v. United States*, 568 U.S. 186, 193 (2013) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)).

The Supreme Court recognized in *Summers* that "special circumstances, or possibly a prolonged detention, might" render detention during a valid search pursuant to a warrant unconstitutional "in an unusual case," 452 U.S. at 705 n.21, and the Ninth Circuit has applied that exception to reverse the results of a bench trial and hold unconstitutional officers' conduct in "removing a gravely ill and semi-naked man from his sickbed without providing any clothing or covering, and then . . . forcing him to remain sitting handcuffed in his living room for two hours rather than returning him to his bed within a reasonable time after the search of his room was completed," *Franklin v. Foxworth*, 31 F.3d 873, 876–77 (9th Cir. 1994). In that case, the officers "cuffed [the plaintiff's] hands behind his back, carried him into the living room, and placed him on a couch, with his genitals exposed," and "[n]o effort was made to obtain clothing or any covering for him." *Id.* at 875. The Ninth Circuit explained its reasoning, in part, as follows:

> A detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged, or if it involves an undue invasion of privacy. Detentions, particularly lengthy detentions, of the elderly, or of children, or of individuals suffering from a serious illness or disability raise additional concerns. Of course, the presence of any of these factors in an individual case does not establish that the detention is unreasonable *per se*. Rather, these factors, along with the *Graham* elements and any other circumstances relevant to an individual case, must be assessed in their totality.
>
> [. . .]
>
> None of the officers had any reason to believe, on the basis of the information they had prior to the search or their observations once in the house, that Curry had committed a crime, or that he was armed. In fact, the officers were not even aware that Curry lived in the house

13

> prior to executing the warrant. It should also have been clear to them that Curry was not a gang member. Finally, it should have been obvious to the officers that Curry presented little risk of danger to them, that he presented absolutely no risk of flight, and that it was highly unlikely that he could interfere with their search in any way.
>
> [. . .]
>
> We emphasize that it is not the fact that there was a more reasonable alternative available that leads us to our conclusion. It is the fact that the officers conducted the detention of Curry in a wholly unreasonable manner—a manner that wantonly and callously subjected an obviously ill and incapacitated person to entirely unnecessary and unjustifiable degradation and suffering. Even had Curry been thought to have been guilty of criminal behavior, we would be required to reject such conduct on the part of individuals sworn to uphold the law. Given the circumstances of this case, the violation was egregious and the injuries substantial.

*Id.* at 876–78.

The circumstances here are in at least some respects not so extreme, in that Woods was capable of moving himself in a wheelchair rather than needing to be carried, and there is no indication that he was unclothed to the extent that his genitals were exposed. On the other hand, like the plaintiff in *Franklin*, Woods alleges that he was not suspected of wrongdoing and that officers were aware of his disability. Moreover, Woods alleges that he is elderly, and being required to remain outside in the cold with only light clothing could perhaps be considered a greater imposition than being held in one's living room in the presence of strangers, particularly for an individual whose disability renders him particularly susceptible to cold.

Under Ninth Circuit precedent, it is clearly established law that "[d]etentions . . . of the elderly . . . or of individuals suffering from a serious . . . disability raise additional concerns," particularly where individuals not suspected of wrongdoing are detained while a search is conducted pursuant to a warrant, and that detaining such individuals "in a wholly unreasonable manner" with "no justification" violates the Fourth Amendment. *See Franklin*, 31 F.3d at 876, 877, 878. On a full factual record, there might well be justifications for Woods's treatment during the search, and this order should not be construed as prejudging the facts of the case. Based on the allegations of Woods's complaint, however, no justification is apparent why Defendants—who allegedly had two officers available to "guard" Woods on the curb, and did not suspect Woods of wrongdoing—could not have detained Woods under supervision inside the house while the search

14

was conducted, or obtained a jacket from the house for Woods, rather than keeping Woods on the curb in light clothing for around half an hour before giving him a tarp or body bag for warmth. Defendants' motion to dismiss this claim against Tong and Polar is DENIED.[5]

**D.  ADA Claim**

Defendants move to dismiss Woods's ADA claim on the basis that he has not alleged deliberate indifference, citing Judge Beeler's decision in *Sweiha v. County of Alameda*, No. 19-cv-03098-LB, 2019 WL 4848227 (N.D. Cal. Oct. 1, 2019), dismissing an ADA claim for failure to provide psychiatric treatment to an arrestee until a week after his arrest. *See* Mot. at 7–9; Reply at 7.

The Court previously held that Woods's substantially identical allegations with respect to this claim in his original complaint were sufficient to proceed against the Hayward Police Department and the City of Hayward. MTD Order at 9–10. Defendants' present arguments effectively ask the Court to reconsider that order, without filing a motion for leave to file a motion for reconsideration as required by Civil Local Rule 7-9(a). There is no reason why Defendants could not have raised arguments based on failure to show deliberate indifference in the context of their motion to dismiss the original complaint, rather than arguing solely and unsuccessfully that the ADA does not require police officers to provide reasonable accommodations of disability in the context of a search and that waiting inside during a search is not a cognizable accommodation.

Regardless, under the circumstances of this case, the question of whether Defendants demonstrated deliberate indifference to Woods's disability is an issue of fact not amenable to resolution on the pleadings. Woods plausibly alleges that Defendants knew of his disability and did not suspect him of wrongdoing, that Woods informed Defendants that his muscular dystrophy was exacerbated by cold and requested an accommodation of being allowed to wait indoors, and that Defendants refused that accommodation and provided no alternative accommodation except

---

[5] The warrant and supporting affidavit submitted after the hearing indicate that Mixon-Alexander's son was suspected of armed robbery, but do not suggest that Woods was suspected of a crime or that Defendants otherwise had reason to believe that Woods was dangerous or might destroy evidence. *See* Agarwal Decl. Exs. 1, 2. The reasonableness of the manner of Woods's detention under those circumstances is not amenable to resolution on the pleadings.

15

for giving a Woods "a yellow body tarp bag" around thirty minutes after he was removed from the home. Contrary to Defendants' arguments, neither providing the body bag after half an hour nor "allowing [Woods] to wheel himself out without raising his hands" establishes a reasonable accommodation or a lack of deliberate indifference as a matter of law. The motion to dismiss this claim is DENIED.

### E. State Law Claims

As a starting point, Defendants provide no authority or explanation for their argument that Woods's state law claims—for negligence, intentional infliction of emotional distress, and invasion of privacy—"rely on [his] federal claims for unlawful search and seizure, as pled." *See* Mot. at 9. Accordingly, even if the Court granted Defendants' motion to dismiss Woods's § 1983 claims, Defendants have not met their burden to show that the state law claims warrant dismissal on that basis. *See Cohen v. Bd. of Trs. of Univ. of D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016) (noting consensus among federal courts that "Federal Rule 12(b)(6) places th[e] burden [of persuasion] on the moving party").

Defendants also argue that Woods has not identified a statutory basis for the City of Hayward or the Hayward Police Department's liability under state law as required by Government Code section 815. Mot. at 10–11. That section provides that "[e]xcept as provided by statute ... [a] public entity is not liable for any injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815. The Court's previous order noted that section 815 would not likely be a barrier to liability in this case, because section 815.2 of the Government Code "provides that a public entity may be held liable for the conduct of its employees within the scope of their duties to the same extent as those employees can be held liable, and section 820 . . . provides that public employees may be held liable to the same extent as private citizens." MTD Order at 12. Woods cites those statutes in his opposition brief, Opp'n at 8, but Defendants argue that his claims must be dismissed because he did not include those statutes in his amended complaint, Reply at 8–9. Defendants are incorrect. The Supreme Court has held that the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v.*

16

*City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Woods's complaint is generally based on factual allegations of conduct by Hayward police officers, and two of his claims under state law specifically asserts that it is based on the conduct of "employees of Defendant City of Hayward." *See* FAC ¶¶ 53, 58. To the extent those officers could be held liable under state law, the City of Hayward and the Hayward Police Department can also be liable, regardless of whether Woods specifically cited particular California statutes or used the words "vicarious liability."

As for the individual defendants Tong and Polar, Defendants contend that Woods has not alleged their "'individual' participation" in any tort. Mot. at 10 (citing *Brown v. City of Fresno*, No. 1:18-cv-01428-AWI-SKO, 2019 U.S. Dist. LEXIS 6609 (E.D. Cal. Jan. 11, 2019)). Woods alleges that Tong and Polar identified themselves as the officers responsible for supervising the operation in which Woods's home was searched and Woods was allegedly detained on the sidewalk. In this Court's view, it is reasonable to infer at the pleading stage that the conduct on which Woods's claims rest is sufficiently related to the manner in which the operation was planned and conducted to find the supervising officers more involved than mere "membership in a group." *Cf. Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002). This case is not like *Brown*, where, at least as summarized by the court, the plaintiff failed to allege any connection between his claims and several of the defendants except that they were police officers in the jurisdiction where the plaintiff was arrested and purportedly subjected to excessive force. *See* 2019 U.S. Dist. LEXIS 6609, at *5–10.

The Court turns to Woods's individual claims under California law.

### 1. Negligence

With respect to Woods's negligence claim, Defendants argue in their motion only that Woods includes "no allegations as to Defendants' legal duty to use due care or the breach of that duty so as to adequately plead negligence." Mot. at 10. "A plaintiff in any negligence suit must demonstrate 'a legal duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury.'" *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1142 (2016) (quoting *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014)).

17

Defendants cite *Hegyes v. Unjian Enters., Inc.*, 234 Cal. App. 3d 1103 (1991), for the need to allege facts showing a duty. That case involved the unusual circumstance of a plaintiff who had not yet been conceived at the time of the defendant's conduct, where there was no "special relationship" as in previous cases recognizing claims for preconception negligence in certain narrow circumstances. *See Hegyes*, 234 Cal. App. 3d at 1110. This, in contrast, is a more straightforward case of a plaintiff affected by Defendants' intentional acts directed toward him—specifically, removing him from his home and allegedly detaining him on the sidewalk to conduct a search. Defendants' duty arises from the basic duty of care codified at section 1714 of the California Civil Code, that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." Cal. Civ. Code § 1714; *see also Kesner*, 1 Cal. 5th at 1142 ("California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others." (citation omitted)). "[I]n the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where clearly supported by public policy." *Kesner*, 1 Cal. 5th at 1143 (citations and internal quotation marks omitted). Defendants have not suggested that any such exception applies here.

As for the question of whether Defendants breached their duty of care, Woods has alleged that Defendants Tong and Polar supervised a raid in which Woods, not suspected of wrongdoing, was detained outside in the early morning cold in light clothing despite Defendants' knowledge that Wood had a disability exacerbated by cold. It is of course possible that some of those facts might prove to be incorrect, or that other facts outside of the complaint might reveal justifications for Defendant's conduct. Taking Woods's allegations as true, however, Woods has alleged sufficient facts to support a conclusion that he was harmed by Defendant's failure to use ordinary care. Defendant's motion is DENIED as to Woods's negligence claim.

### 2. Intentional Infliction of Emotional Distress

Defendants argue that Woods has not stated a claim for intentional infliction of emotional distress because "there are no allegations that amount to either intentional or reckless conduct by

Defendants that was intended to inflict severe emotional distress on [Woods]." Mot. at 10. Under California law:

> A cause of action for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." And the defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result."
>
> [. . .]
>
> With respect to the requirement that the plaintiff show severe emotional distress, this court has set a high bar. "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."

*Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)) (final alteration in original; internal citations omitted without ellipses).

Woods's present complaint does not allege Defendants' actual intent to injure him, or actual knowledge that severe emotional distress would result. The Court therefore DISMISSES this claim with leave to amend. The Court does not reach the question of whether Woods has sufficiently alleged conduct by Defendants "so extreme as to exceed all bounds of that usually tolerated in a civilized community" or that he experienced "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *See id.* If Woods chooses to amend to pursue this claim, he should include all facts within his knowledge that support those elements.

### 3. Invasion of Privacy

Defendants treat Woods's claim for "invasion of privacy" as a claim for "intrusion into a private place," and acknowledge that California law recognizes such a claim. *See* Mot. at 10 (citing *Shulman v Grp. W Productions, Inc.*, 18 Cal. 4th 200, 230–31 (1998)). The California Supreme Court has held that an "action for intrusion has two elements: (1) intrusion into a private

19

place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman*, 18 Cal 4th at 231. Defendants' only argument on this point is that Woods "simply recites the legal elements" of this claim, Mot. at 10, and that he failed to provide legal authority for the claim in his opposition brief, Reply at 8. The Court nevertheless concludes that a valid search warrant provides a complete defense to a claim for invasion of privacy, and DISMISSES this claim with prejudice.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion is GRANTED as to: (1) Woods's claims for unreasonable search and invasion of privacy, which are dismissed with prejudice; (2) Wood's claim for unreasonable seizure against the City of Hayward and the Hayward Police Department under *Monell*, which is dismissed without leave to amend at the time but without prejudice to seeking such leave if warranted it a later date; and (3) Woods's claim for intentional infliction of emotional distress, which is dismissed with leave to further amend. The motion is DENIED as to Woods's claim for unreasonable seized against the individual defendants, his claim under the ADA, and his claim for negligence.

If Woods wishes to pursue his claim for intentional infliction of emotional distress, he may file a third amended complaint no later than April 3, 2020. Any changes to his allegations must be limited to addressing the defects in that claim, unless Woods seeks and obtains leave of the Court to amend as to other issues.

**IT IS SO ORDERED.**

Dated: March 13, 2020

JOSEPH C. SPERO
Chief Magistrate Judge